# ROCK ISLAND & PEORIA RAILWAY COMPANY
## v.
## JOHN POTTER.

*Railroads—Negligence—Delay in Transferring Stock—Telephone Message—Presumption as to Party Replying—Damages—Evidence.*

1. The failure of a railroad company to immediately transfer stock to a connecting line, or to notify the consignees or the agents of the connecting line for three hours after the arrival thereof, notwithstanding repeated inquiries therefor, constitutes gross negligence.

2. In an action brought to recover damages suffered through the death of hogs arising from the alleged negligent failure of the carrier to deliver the same within a reasonable time, this court holds that the answer to a telephone inquiry as to their arrival, of the railroad telegraph office, was admissible as showing *prima facie*, that the same came from a servant of the company, and declines to interfere with judgment for plaintiff.

[Opinion filed May 25, 1889.]

APPEAL from the Circuit Court of Peoria County; the Hon. S. S. PAGE, Judge, presiding.

Mr. H. W. WELLS, for appellant.

Mr. GEORGE B. FOSTER, for appellee.

LACEY, P. J. This was an action originally commenced before a justice of the peace to recover from the appellant the loss or damage to a certain carload of hogs shipped by the appellee on the appellant's railroad, from Dunlap station in Peoria county, consigned to Fifer & Co., Peoria, Ill., caused by the death of eleven of the hogs from heat while in Peoria, before delivery to the consignee. The recovery in the Circuit Court was $161.09. There is no dispute as to the value of the hogs lost, or that the judgment is too large, if the recovery is rightful. The case was tried by the court without a jury.

The appellant agreed to transport the carload of hogs from Dunlap to its freight station at Peoria, ready to be delivered to the consignee, or to the agent of the connecting railroad in case it was to be forwarded from the freight station of appe'-lant; and this appellant well understood, as it finally delivered the car to the connecting road without any further orders or notice. It appeared that the hogs were to be forwarded beyond the freight station of appellant, to wit, from the brewery at appellant's freight station to the stock yards, a distance of two or three miles, and that the P. & P. U. R. R. was the connecting line. It appears that the hogs arrived at appellant's station at the brewery at about 5:30 o'clock P. M., and were not delivered to the connecting line till 8:30 o'clock P. M., and not finally delivered by the P. & P. U. R. R. to the stock yards till 10:30 o'clock P. M., and were immediately unloaded, when eleven of the hogs were found dead, caused, no doubt, by the heat and delay. It appears that the hogs must have been side-tracked before delivering them to the P. & P. U. R. R. Co. about three hours, and were not delivered till two hours later to the consignees at the stock yards.

It appears from the contract of shipment that one John Oglesby accompanied the hogs in transit from Dunlap as the agent of appellee, and the car was to be in sole charge of Oglesby during the transit, and the railroad company was to assume no responsibility for the safety of the stock so in charge of the shipper's agent, whether from theft, heat    *    *
*    reasonable delay of transit, or from any other cause or accident or injury except gross negligence of the company.

We are of the opinion that the evidence supported the finding of fact by the court below, that the appellant was grossly negligent in not delivering the carload of hogs to the connecting line, and keeping it on its side-track for three hours without either notifying the consignees or the agents of the connecting line of the fact of the arrival, and not making the transfer immediately. There is no evidence to show that it made any effort to make the transfer, but the evidence shows that appellant kept the hogs three hours, and

even misled the agent of the consignees by stating, at least twice, in answer to calls, that the hogs had not arrived.

About half past five o'clock the salesman, Beal, of the consignees, went to the Rock Island telegraph office and asked for the stock from Dunlap, and the operator said they did not have it; and near seven he again inquired, by telephone, of the C., R. I. & P. telegraph office, where, generally, consignees got their information, and some one answered that they had no stock for stock yards, from Dunlap. It is true that the telephoning and answer is objected to by appellant's counsel, but we think it is proper, at least *prima facie*, as showing that the answer came from the agents of appellant. In addition to this, while the evidence showed this long, unexplained delay in holding the stock by appellant before making the transfer, the appellant did not introduce a witness to show that the fault of not making the transfer was on the P. & P. U. R. R. Co. It did not attempt to show that it even notified the connecting company that the cars were there for transfer. We think that the evidence, unexplained, was such that the court below might reasonably find that the carload of hogs, after its arrival in Peoria, was lost, as far as the knowledge of its officers were concerned, for the three hours before its transfer.

It is attempted to throw the responsibility of this failure to use diligence in making the transfer on Oglesby, the appellee's agent. But, by the contract, the agent's responsibility ceased after the transit to Peoria; and although the contract is very liberal in casting every hazard and duty on the agent, we think it fails to make it his duty to make the transfer in a reasonable time. That was the duty, by the contract, the appellant was to perform. And besides that, Oglesby reported the arrival to the consignees at about seven o'clock, but even then the latter could get no tidings from the appellant's agents of the carload of hogs. In this, also, appellant was negligent. We think the court below was fully justified in its findings.

*Judgment affirmed.*