## W. H. Godair et al. v. Ham National Bank.

1. TELEPHONE CONVERSATIONS—*when competent.* Telephone conversations may be competent notwithstanding the voice of the person carrying on the conversation cannot be identified.

Action in assumpsit. Error to the Circuit Court of Jefferson county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

JONES, JONES & HOCKER and WILLIAM H. GREEN, for plaintiffs in error.

H. CLAY HORNER and ALBERT WATSON, for defendant in error.

MR. JUSTICE HIGBEE. delivered the opinion of the court.

This was an action of assumpsit brought by the Ham National Bank of Mt. Vernon against W. H. Godair, A. G. Godair and E. C. Gibson, partners, doing business under the name of the Godair Commission Company, and Samuel L. Moreland, upon two drafts or bills of exchange drawn by S. L. Moreland, upon the commission company in favor of said Ham National Bank, for the sum of $500 each, one dated November 4 and the other November 6, 1903, and both protested for non-payment.

The verdict and judgment in the court below were in favor of the bank, and the defeated parties bring the case here by writ of error.

It appears from the evidence in the record that S. L. Moreland was a stock buyer and shipper in Jefferson county, Illinois, and some time prior to the giving of the drafts in question entered into an arrangement with plaintiffs in error, by which he was to purchase stock and ship to them, and they were to pay drafts drawn by him upon them to furnish money

to carry on his business. This agreement was communicated by Moreland to defendant in error, and it undertook to cash the drafts drawn by Moreland upon plaintiffs in error, and did so for more than a year prior to the date of the drafts in question. The manner in which the business was conducted was for Moreland to draw his checks upon the bank, and when the over-draft amounted to $500 the officers of the bank would fill that amount in a draft upon plaintiffs in error, using a blank signed by Moreland, a number of which he left at the bank for that purpose, and send the same to a St. Louis bank for collection. No bills of lading were sent with the drafts or exhibited to the officers of the bank. For more than a year plaintiffs in error promptly honored all such drafts drawn upon them. Moreland appears to have gotten behind in his accounts with plaintiffs in error, and becoming uneasy about the matter, they, on November 6th, sent appellant Gibson, one of the firm, to Mt. Vernon to investigate Moreland's financial standing. Gibson called at the banking house of defendant in error and talked with the officers of the bank about Mr. Moreland's responsibility and standing in the community and reputation for business probity, and afterwards went to the village of Ina, where Mr. Moreland lived, returning to the bank in the afternoon when he told the officers that he "was satisfied with his business down there and that Mr. Moreland was straight and honest." Some conversation was had concerning the fact that a draft of Mooreland's of $500 on November 4th had already been sent for collection, and at the same time Gibson was told by the cashier that another draft had been sent that day to pay checks by Moreland, a number of which had come in the same day. Gibson then said to the cashier, "Well, I will give you instructions not to send any more and not to forward any more. We will not honor any more drafts." The two drafts last mentioned were not honored, one being protested the day Gibson was at Mt. Vernon and the

other the next day, and it was for them this suit was brought. Defendant in error relied upon a promise made by plaintiffs in error to Moreland and communicated to it by Moreland, to accept and pay the drafts which Moreland should draw upon them in the course of their business.

Plaintiffs in error insist that the defendant in error was not entitled to recover, for the reason that the only agreement shown to have been made between Moreland and plaintiffs in error was, that they would cash drafts on shipments of stock and not otherwise, and that the drafts sued on were not covered by shipments or given on account of purchases of stock for shipment.

Moreland testified that he had conversations with plaintiffs in error A. G. Godair and E. C. Gibson and their bookkeeper; that Gibson and the bookkeeper told him "to go ahead and buy the stuff and they would take care of the drafts;" that Godair "told me he would pay the drafts;" that he had frequent conversations with Godair in which Godair always said he would pay the drafts.

On the other hand plaintiff in error A. G. Godair testified that he never made any arrangement to take care of Moreland's drafts in relation to his shipping cattle and that his company did not make such an arrangement. Plaintiff in error Gibson also testified that he never made any arrangement or contract with Moreland with reference to paying drafts that might be drawn by him on witness or the firm; that he never had any conversation with Moreland in reference to an agreement or arrangement about Moreland making drafts and the firm honoring them. It is not questioned that Moreland told the officers of the bank he had an arrangement with plaintiffs in error to draw sight drafts against them to pay for stock, and that the stock was to be shipped to plaintiffs in error from time to time; or that Moreland said he had an arrangement and they

told him to draw drafts and they would protect him and to ship the stuff to them. The testimony of Moreland upon the subject was corroborated by the course of business between the parties interested, as for more than a year after the conversation is alleged by Moreland to have taken place, he purchased stock and the firm cashed the drafts in accordance with the arrangements said by Moreland to have been made.

The drafts which are sued upon in this case were drawn in the usual course of business between the several parties in interest, and the action of Moreland in drawing them appears also to have been ratified by plaintiff in error Gibson, at the time of his visit to Mt. Vernon. The proofs in the case clearly supported the verdict of the jury in favor of defendants in error.

Plaintiffs in error insist that the court erred in permitting the witness Grant, who was cashier of the bank at the time Moreland began to draw drafts upon plaintiffs in error, to testify concerning a telephone conversation claimed to have been had by him with some one connected with the Godair Commission Company, who answered to a call for Mr. Godair, in reference to the payment of certain drafts for cattle which Moreland expected to ship a few weeks later. A. G. Godair denied that such conversation was had with him and also testified that W. H. Godair had no connection with the detail work of the office and never took part in the management of the business. While Grant was not able to identify the voice of the person at the other end of the 'phone, yet as he had called up the office of plaintiffs in error and had the conversation with some one there who professed to have authority to act for the commission firm, we are of opinion that while not conclusive, it was at least a *prima facie* showing of a conversation with some one connected with the office of plaintiffs in error, and it was for the jury to say what weight should be given to it in view of all the evidence in the case. R. I. & P. Ry. Co. v. Potter, 36 Ill. App. 590.

The instructions given by the court announced the law governing the case to the jury with substantial accuracy.

The judgment of the court below will be affirmed.

*Affirmed.*