JOHN D. BARRETT and Another v. B. J. MAGNER and Another.[1]

July 17, 1908.

Nos. 15,714—(189).

**Evidence—Conversation over Telephone.**

A telephonic conversation is admissible in evidence, when, from all the circumstances, the identity of the party answering the telephone is established with reasonable certainty; and recognition of the voice, or identity by admission of one who answers that he is the person desired, is not necessarily required. A witness testified that he secured telephone connection with the place of business of a party, that some one answered and stated the one wanted was not in, but would be called, and that soon thereafter another voice answered, and a conversation took place respecting a certain business transaction. *Held*, the evidence was admissible; the witness having also testified that the talk over the 'phone was of the same character as occurred a few days previous in a personal conversation between the same parties.

**Chattel Mortgage—Sufficiency of Description.**

A chattel mortgage, duly executed and recorded, stated the place of residence of the mortgagor and contained the following description in part of the mortgaged property: "One bay horse, 6 years old, weight 1,500; one bay horse, 6 years old, weighs 1,500, has white stripe on face; one black horse, 7 years old, weighs 1,500; one bay horse, 8 years old, weighs 1,500; one black horse, 9 years old, weighs 1,500; one dapple gray horse, 9 years old, weighs 1,500." The property was described as being in possession of the mortgagor, but the place of possession was not specially stated. *Held*, that it conclusively appeared from the face of the mortgage that the description was sufficient to enable a third party, aided by inquiries which the instrument suggested, to identify the property.

**New Trial.**

Where two or more distinct issues have been submitted to a jury, one erroneously, and a general verdict returned, a new trial must be granted, for the reason that it is impossible to determine upon what issue the verdict was based.

Action in the municipal court of Minneapolis to recover possession of certain personal property or $355, its value. Defendant Daniel J. Molan alone answered. The case was tried before Charles L.

[1] Reported in 117 N. W. 245.

Smith, J., and a jury which rendered a verdict in favor of defendant. From an order denying their motion for a new trial, plaintiffs appealed. Reversed and new trial granted.

*Simon Meyers,* for appellants.

*James E. O'Brien,* for respondent Molan.

LEWIS, J.

March 30, 1907, appellants sold to B. J. Magner, in consideration of $525, a team of horses and a set of harness. Magner paid $100 cash and executed a chattel mortgage upon the team and harness, and upon three other horses, two other sets of harness, and a wagon, as security for the deferred payments. The mortgage was duly filed in the office of the city clerk of Minneapolis April 2, 1907. The following May 22 respondent Molan purchased from Magner the team which had been sold to him by appellants, and this action was brought in replevin to recover possession of the team. Molan claimed to be an innocent purchaser, without notice of appellants' mortgage, and upon the issues presented recovered a verdict in the trial court.

1. Was it error to receive in evidence a certain telephonic conversation testified to by Molan as having taken place between himself and Moses Zimmerman, appellants' manager? One of the issues at the trial was that appellants had given Magner permission to sell the team, and that he had accordingly acted upon appellants' suggestion and sold the team to Molan, without conveying to him knowledge of the fact that the mortgage was in existence. Magner testified that after he had purchased the team from appellants, and before he knew anything about Molan, he had a personal conversation with Mr. Zimmerman, which took place on or about the tenth or twelfth of April, at which he told Mr. Zimmerman that one of the horses was balky; that he could not do anything with it so far as hauling heavy loads was concerned, and that he (Magner) wanted to get rid of the team; that appellants would have to take it back or let him sell it; that Zimmerman had replied: "Let them go. Sell them, if you want to." After this conversation Magner advertised the team for sale in the Minneapolis newspapers, and in response Molan appeared as a prospective purchaser. Before any deal was closed, Magner called up appellants on the telephone and asked to talk with Zimmerman, and

his testimony on that point is as follows: "They said he was out, and I says: 'Can I talk with him?' And they brought some one to the telephone. Whoever it was, it was supposed to be him. I don't know whether it was or not. I couldn't swear to it." I had occasion, prior to the month of May, 1907, to call up Barrett & Zimmerman at different times over the 'phone. * * * "Q. Whom did you ask for over the 'phone? A. I asked for Mr. Zimmerman," and received the reply that he was out, but that they would call him in; and I waited until they answered again, and some one else came to the 'phone, and I told him who I was, and I said, I have a chance to sell that team, and he said "Go ahead and sell them, if I wanted to." This testimony was objected to upon the ground that it was incompetent, that no proper foundation was laid, and that it was not shown that Mr. Zimmerman had any authority with reference to the matter under consideration.

Appellants make the point that it does not appear from the telephone conversation whether Magner referred to the team which he had bought, and which is involved in this action, or not; that the evidence is not sufficient to identify Zimmerman as the party at the other end of the telephone. In the case note to Planters v. Western Union (Ga.) 6 L. R. A. (N. S.) 1180, the authorities upon this subject have been collected and carefully analyzed, and the editor states as a general proposition: "When the admissibility of a telephonic communication depends upon its having been made with a particular individual, and not merely with a person connected with a certain office or place of business, it is clear that the identification of the office or place of business will not be sufficient to lay the foundation for the admission of the telephonic communication, unless under the circumstances of the particular case, the identification of the office amounts to a practical identification of the individual." For instance, in Rock Island v. Potter, 36 Ill. App. 590, the testimony of a witness that he inquired by telephone of the railroad telegraph office, where the consignees generally got their information, with reference to a certain shipment, and that some one answered giving him the information he sought, was held sufficient to show prima facie that the answer came from an agent of the railroad company, and to make it admissible against the railroad company. See also Kansas City v. Standard,

123 Mo. App. 13, 99 S. W. 765, and Guest v. Hannibal, 77 Mo. App. 258. A telephonic communication was held admissible against a carrier, without evidence of identity other than that plaintiff's agent called the central office over the wire, and asked to be put in communication with defendant's agent's office, and was told that he had been; that he then inquired if the person talking was the stated agent, and, being answered in the affirmative, gave instructions with reference to certain property. It was held that when one is connected by telephone wire with the place of business, or with one with whom he desires to converse, and is answered by some one assuming to be such a person, it will be presumed that he is such person.

However, when the communication is of such a nature as to require identification of the individual, there must be evidence of such identity, in addition to the mere fact that the witness asked for a connection with his place of business, and that when the connection was made some one who claimed or assumed to be such person responded. This is illustrated by the case of Obermann v. Adams, 35 Ill. App. 540. It was there held error for the court to admit the testimony of the plaintiff to the effect that he called up the brewery over the 'phone, and that the individual at the other end of the wire assured him that the party inquired about had authority to purchase goods on credit; the witness having admitted that he did not recognize the voice of the individual who spoke with him through the 'phone, as he never knew any of the people connected with the brewery company. So in Swing v. Walker, 27 Pa. Super. Ct. 366, it was held that an admission claimed to have been made by one of the defendants over the telephone was properly excluded, where the witness was not acquainted with defendant's voice and could not identify it. While the identification of the voice of the party responding at the 'phone has, in many cases, been held sufficient to establish identification prima facie, it does not follow that the recognition of the voice is the exclusive means of identifying the party. Surrounding circumstances may be taken into account. Davis v. Walter, 70 Iowa, 465, 30 N. W. 804; Wolfe v. Missouri, 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. 331; Godair v. Ham, 225 Ill. 572, 80 N. E. 407, 116 Am. St. 172; 3 Wigmore, Ev. § 2155.

Magner had already testified that soon after making the purchase of the horses he found that one of them was balky; that he then had a personal conversation with Mr. Zimmerman, and told him the condition of the horse, and that he wanted to get rid of the team; that Mr. Zimmerman would have to take it back, or let him sell it; and that Zimmerman told him to sell them if he wanted to. Assuming that the sale was consummated entirely by Zimmerman as appellants' manager, and that such a personal conversation had taken place, we are inclined to the opinion that sufficient ground was laid for the introduction of the evidence as to the telephone conversation. While Magner did not identify Zimmerman as the person who answered the telephone, a failure in that respect did not necessarily make the conversation inadmissible. Had there been no previous personal conversation, a failure to identify the party under such circumstances might not be sufficient to make it admissible prima facie.

Afterwards, in the course of the trial, Mr. Zimmerman testified that he never had any conversation whatever with Magner, either personally or by telephone, and that he had never in any way consented that the mortgaged property might be sold free from the mortgage. But, conceding that such denial conclusively overcame the effect of the evidence already introduced, no motion was made to strike it out, and, so far as the question now before the court is concerned, we hold that the evidence was competent. Conkling v. Standard (Iowa) 116 N. W. 822.

2. The mortgage in part reads: "Know all men by these presents, that I, B. J. Magner, 1101 Emerson Ave. No. of Minneapolis, county of Hennepin, in the state of Minnesota, * * * hereby sell and mortgage unto Barrett & Zimmerman, St. Paul, and assigns, the following described property, now in my possession, owned by me, and free from incumbrance, to wit: One bay horse, 6 years old, weight 1,500; one bay horse, 6 years old, weighs 1,500, has white stripe on face; one black horse, 7 years old, weighs 1,500; one bay horse, 8 years old, weighs 1,500; one black horse, 9 years old, weighs 1,500; one dapple gray horse, 9 years old, weighs 1,500; three sets of double work harness; three wide-tired wagons, with neckyoke and whippletrees."

The question is: Was the description in the mortgage, aided by inquiries which the mortgage itself suggests, sufficient to identify the property to a third party? The tests applicable here are not the same as are applied between a mortgagor and mortgagee in case of an incomplete and insufficient description. The general rule is thus stated in Tolbert v. Horton, 33 Minn. 104, 22 N. W. 126: "The general rule is that a description in a chattel mortgage of the mortgaged property is sufficient if it will enable a third person, aided by inquiries which the instrument itself suggests, to identify the property." In that case, however, the mortgage under which the defendant claimed expressly stated that the property was subject to the mortgage of the plaintiff, and the court restricted the application of the general rule to the facts in that case by the observation that it was to be noted that the defendant did not occupy the position of an ordinary third party and stranger.

The same general rule was applied in Schneider v. Anderson, 77 Minn. 124, 79 N. W. 603, where the contest was between a mortgagee and the sheriff, who had levied upon the property. In that case the question was submitted to a jury, and the trial court found in favor of the chattel mortgage claimant, and the decision was affirmed upon the ground that the evidence was sufficient to sustain the finding.

This question was under consideration in the case of Adamson v. Horton, 42 Minn. 161, 43 N. W. 849, where the contesting parties were the mortgagee and the subsequent purchaser without notice of the mortgage. The property was household furniture, and described: "One dark wood chamber suit, (three pieces;) one red centre table," etc., in possession of the mortgagors, in a certain city, county, and state. The court held the description could not well be any more definite, that it furnished the means of identifying the property as fully as was ordinarily possible with that kind of property, and that the description, in connection with the statement as to the place and manner of possession, was sufficient to enable a third party to identify the same.

Our attention has been called to the early case of Eddy, Fenner & Co. v. Caldwell, 7 Minn. 166 (225), where the court held that the evidence was sufficient to justify the jury in holding that the descrip-

tion of the property in the mortgage was sufficient to enable a third
party to identify it; but the court called special attention to the fact
that the party claiming to be an innocent purchaser had actual notice
of the mortgage and had been informed that it had been released.
In the case of Adamson v. Fagan, 44 Minn. 489, 47 N. W. 56, the
description in the mortgage read: "One gray horse six years old,
weighs 1,400 pounds," and "that the same is now in his [the mort-
gagor's] possession in the city of Minneapolis." The horse was white,
instead of gray; but the discrepancy was considered to be of no ma-
terial importance, and the finding of the trial court to the contrary
was reversed.

The description of the horses contained in the mortgage is quite
general, and some items of identification were omitted. Experts who
testified claimed that one of the horses was past eight, and another
past thirteen years old. According to the evidence, one horse was
a dark bay, and the other a light bay. It was stated that the mort-
gagor resided at 1101 Emerson Avenue North, Minneapolis; but
it was not stated at what place the property was located. The mort-
gage was executed at the sale stable in Ramsey county, and presum-
ably the property was at that time in the mortgagor's possession in that
county. The reasonable inference is that he intended to have them
in his possession at his place of residence; no other place being men-
tioned. Horton v. Williams, 21 Minn. 187. The horses sold by Mag-
ner to respondent Molan, according to the evidence, could have been
more minutely described by stating their height, and any peculiar
marks on them; but if a third party, having knowledge of the con-
tents of the mortgage, would have been informed that Magner, of
1101 Emerson Avenue North, Minneapolis, had mortgaged two bay
horses, each weighing fifteen hundred pounds, one with a white stripe
on the face, this information would suggest to any man of ordinary
prudence that he should look up Magner at his place of residence
and ascertain the facts.

We have considered the following cases, but do not deem them
controlling: Farkas v. Duncan, 94 Ga. 27, 20 S. E. 267; Ranney
v. Meisenheimer, 61 Mo. App. 434; Tompkins v. Henderson, 83 Ala.
391, 3 South. 774; Fisher v. Porter, 11 S. D. 311, 77 N. W. 112;
Peterson v. Foli, 67 Iowa, 402, 25 N. W. 677; Barrett v. Fisch, 76

Iowa, 553, 41 N. W. 310, 14 Am. St. 238; Andregg v. Brunskill, 87 Iowa, 351, 54 N. W. 135, 43 Am. St. 388.

We attach but little importance to the difference in the age of the horses as testified to by the experts called for that purpose and the age as given in the mortgage. It is a matter of common knowledge that it is difficult to determine with any degree of certainty the age of a horse, and that a third party, in following up the suggestions in the mortgage, would have been misled on the question of the horse's age, is not at all probable. We consider the description sufficient to constitute constructive notice, within the decisions of this court, to which may be added: Willey v. Snyder, 34 Mich. 60; Wilson v. Rustad, 7 N. D. 330, 75 N. W. 260, 66 Am. St. 649.

3. The court instructed the jury to return a verdict for the plaintiffs, provided they should find from the evidence that the description contained in the mortgage was sufficient within the rule stated, and if they should further find that the plaintiffs had not given their consent to sell the property; on the other hand, that if they should find from the evidence that the mortgage was not sufficient within the rule, or if they should find that the plaintiffs had waived their rights to the mortgage and given consent to sell the property, that they should return a verdict for defendant. The jury returned a general verdict in favor of defendant. It was error to submit to the jury the question of the sufficiency of the description in the mortgage, for the reason discussed in the second branch of the opinion; and, it being impossible to determine upon which ground the jury based the verdict, a new trial must be granted. Peterson v. Chicago, M. & St P. Ry. Co., 36 Minn. 399, 31 N. W. 515.

Reversed. New trial.