THEISEN *v.* DETROIT TAXICAB & TRANSFER CO.

1. EVIDENCE—CONVERSATION BY TELEPHONE—ADMISSIBILITY.

A telephone conversation is admissible in evidence, where the identity of the person communicated with by telephone is established.

2. SAME—JUDICIAL NOTICE—TELEPHONES—NECESSITY.

The court will take judicial notice of the fact that a modern invention, such as the telephone, is a necessity in the conduct of business especially in the large cities.

3. TELEGRAPHS AND TELEPHONES—INVITATION TO USE—PRESUMPTIONS—IDENTITY.

A business man who installs a telephone in his office invites the public to transact business with him by its use with knowledge of existing presumptions and inferences in the business world that usually the person answering the telephone is the person called for and is the person whom he represents himself to be.

4. EVIDENCE—TELEPHONE CONVERSATION—ADMISSIBILITY—IDENTITY.

Where two parties are subscribers to the same telephone exchange, and one party, using the telephone directory to ascertain the number of the other party, calls for such other party, and is connected by central with such other party, and a conversation ensues in which the party called responds and informs the party calling that he is the party called, *held*, sufficient to raise a rebuttable presumption or inference to make a *prima facie* case of identity.

5. SAME—AUTOMOBILES—PRINCIPAL AND AGENT—IDENTITY.

In an action for damages to plaintiff's automobile caused by a collision with a taxicab, evidence of a telephone conversation by plaintiff's son with a person in defendant's office, who said he was its manager, that the taxicab belonged to defendant, and that the driver had reported the accident, *held*, admissible for the purpose of identifying the owner of the taxicab.

6. PRINCIPAL AND AGENT—HOLDING OUT BY PRINCIPAL—NAME OF AGENT ON LETTER-HEADS.

Agency may be inferred from the fact that circulars and letter-heads of the defendant described one as its agent.

Error to Wayne; Perkins, J., presiding.  Submitted January 10, 1918.   (Docket No. 40.)    Decided March 27, 1918.

Case in justice's court by John W. Theisen against the Detroit Taxicab & Transfer Company for damages to plaintiff's automobile.  From a judgment for defendant, plaintiff appealed to the circuit court. Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Clarence E. Lehr*, for appellant.

*Julius J. Lechner* and *William R. McCredie*, for appellee.

Plaintiff's automobile was damaged in a collision with a taxicab at the intersection of 16th street and Michigan avenue, in the city of Detroit, and he brought this suit in justice's court to recover for such damages.   Upon appeal he recovered a judgment for $66.30.   Upon the trial in the circuit court plaintiff introduced evidence of the collision of his automobile with a taxicab under such circumstances as would render the owner of the taxicab liable, proved the amount of his damages, and rested without introducing evidence connecting defendant with the ownership of the taxicab.   Defendant thereupon moved for a directed verdict on this ground.   The court, without deciding the motion, allowed plaintiff to reopen his case and put in further testimony.   One of plaintiff's attorneys testified that he wrote defendant with reference to the accident and that shortly thereafter a man called upon him, said he was the driver of the taxicab which injured plaintiff's car and that he was driving the taxicab for the defendant.   On motion this testimony was stricken out as hearsay.   Plaintiff assigns error upon this, although he appears to have acquiesced in the ruling.   Plaintiff also pro-

duced his son as a witness and he testified that he called up the defendant by telephone, using the telephone directory, and asked for the manager, that he got hold of Mr. Paige, who said he was the manager and discussed with him the accident to his father's car; that Mr. Paige said their driver had reported the accident and witness informed him it was his father's car; that Mr. Paige said the taxicab belonged to defendant and that they would send the driver out to see witness. Witness also stated that the driver came out to see him the next day, but as he was not there this statement must be treated as hearsay. Defendant developed, on cross-examination of this witness, that he had never talked with Mr. Paige before, and that he based his testimony that it was Mr. Paige on the statement over the phone that it was Mr. Paige, and defendant then asked to have the testimony of this witness stricken out, which motion was overruled. Defendant further developed, on the cross-examination of this witness, that he had seen bills of defendant and upon them it appeared that Mr. Paige was the president of defendant's company. Plaintiff again rested and the court then refused to direct a verdict for defendant. No testimony was offered by defendant and the case was submitted to the jury with a charge upon which no error is assigned. No claim is made that there is more than one telephone company in Detroit, or that there are any special circumstances in the case which render the telephone conversation here testified to inadmissible if such conversations are admissible without identifying the voice of the party called.

FELLOWS, J. (*after stating the facts*). The important questions presented on this record are the admissibility of the telephone conversation and its effect. Upon these questions the authorities are not in harmony. This court has already held that a telephone

conversation is admissible where the identity of the persons communicated with by telephone is established. *Harrison Granite Co.* v. *Railroad Co.*, 145 Mich. 712. The contention here goes further, and we are now called upon to determine the admissibility and effect of a telephone conversation conducted in the usual manner in the business world, by ascertaining through the directory the number of the subscriber and then being connected with that subscriber through "central" and conducting such conversation.

Courts must take judicial knowledge of modern discoveries and inventions that have become of general and almost universal use in our commercial life. The telephone is no longer a luxury or even a mere convenience, but is a necessity in the conduct of business, especially in our large cities. We cannot close our eyes to the fact that a very large and considerable portion of the business of the country is transacted over it and by its use, nor that mistakes in connections are infrequent and when they occur the party calling is at once informed of the mistake by the party at the other end of the line. We cannot close our eyes to the fact that business transactions of large moment and private affairs daily depend upon the presumption and inference that, by the use of the telephone, parties have conversed with the actual party called, and that the party answering was, in the absence of a mistaken connection, the person called for and was the person whom he represented himself to be. The business man who installs a telephone in his office invites the public to transact business with him by its use, and he extends such invitation with the knowledge that such presumptions and inferences exist in the business world.

We have stated that the authorities are not in harmony, but we are persuaded that those cases holding such conversations admissible are by far the better

reasoned, and that the weight of authority sustains the admissibility of such proof. Most of the cases to the contrary pass the question with but little discussion, and some of them are earlier cases before telephones became so thoroughly tested and entrenched in business life. None of the cases sustaining the admissibility of such conversations, so far as we can ascertain, lose sight of the rule that agency may not be proved by statements of the agent, nor the rule that the authority of the agent must be established to bind the principal by his acts, but proceed upon the theory, based upon business experience, that when one in the usual manner obtains the office of another on the telephone a presumption or inference arises sufficient to make a *prima facie* case that the person who is in fact summoned to the telephone, and who conducts the negotiations, is authorized so to do, rather than to assume, until the contrary is proved, that he is an officious intermeddler with the affairs of others.

Mr. Wigmore, in his work on Evidence (Vol. 3, § 2155), written in 1904, says:

"In proving the receipt of a communication by telephone, any one of several distinct principles of evidence may be involved and give rise to distinct objections, whose validity may rest on different considerations.

"(1) B asserts that certain words (assumed to be receivable as admissions or the like) were uttered to him by A over the telephone; how can B testify that the antiphonal speaker was A? This involves genuinely the principle of authentication; and three situations are to be distinguished:

"(a) It is generally conceded that a person may be recognized and identified by his voice, if the hearer is acquainted with the speaker's voice. Assuming, then, that B is thus acquainted with A's voice, and that voices can sometimes be distinguished on the telephone, and that B did in this instance distinguish A's voice, then B's belief that A was the speaker is founded on

sufficient evidence. This much seems to be generally accepted.

"(*b*) But if there is no recognition of voice, what can supply sufficient evidence to authenticate the antiphonal speaker? In a given case, no doubt, sundry circumstances (including other admissions, and the like) may suffice. But, apart from special circumstances, can any rule be laid down? No one has ever contended that if the person first calling up is the very one to be identified, his mere purporting to be A is sufficient, any more than the mere purporting signature of A to a letter would be sufficient. The only case practically presented therefore is that of B's calling up A and being answered by a person purporting to be A. There is much to be said for the circumstantial trustworthiness of mercantile custom, by which, in average experience, the numbers in the telephone-directory do correspond to the stated names and addresses, and the operators do call up the correct number, and the person called does in fact answer. These circumstances suffice for some reliance in mercantile affairs; and it would seem safe enough to treat them in law as at least sufficient evidence to go to the jury, just as testimony based on prices-current is received. This view has received some judicial support.

"(*c*) An additional element enters where the antiphonal speaker does not purport to be a particular person, but merely some member of the office-staff authorized to make a contract or an admission. Here the question is whether there is sufficient evidence that he was really a person acting in the opponent's office and authorized for such transactions, or was a mere intruder, or bystander, or unauthorized clerk. On the principle above suggested (though not with the same force) mercantile experience may well suffice, by which customarily the person who is in fact summoned to the telephone and proceeds to conduct the negotiation is *prima facie* a person authorized to do so, precisely as a person receiving money at the cashier's desk is presumably authorized to do so. Upon this point there is little judicial inclination to take the liberal view.

"In any event, particular additional circumstances may always suffice to complete the gap."

Since the publication of Mr. Wigmore's work, the supreme court of California has considered this question at some length in the case of *Union Construction Co.* v. *Telegraph Co.*, 163 Cal. 298. In this case a Mr. Veeder testified that he called the central telephone office and asked to be connected with the office of defendant telegraph company; the connection was made and some one responded, apparently at the Western Union office. He inquired if that was the Western Union Telegraph office, and received the answer "yes." He did not recognize the voice and had no means of knowing that he was connected with defendant's office, other than that he had made the call in the usual way. The court considers the rules we have heretofore adverted to with reference to proof of agency, and says:

"We are of the opinion, however, that there was sufficient circumstantial evidence to make a *prima facie* case of identity and authority."

The court then proceeds to discuss the question, and, after considering it fully, announces the following rule:

"For these reasons we conclude that when it appeared that plaintiff and defendant each maintained a business office in the same city, that each had a telephone in such office connecting with the same city telephone system, with their respective names and numbers in the regular telephone directory, that plaintiff called on the operator at the central station, in the usual way, for a connection with defendant's office, that a connection was thereupon made at the central station with some line, apparently in the usual manner, that some one responded at the other end of the line, and, being asked answered that the end was the office of the Western Union Telegraph Company, there was sufficient *prima facie* proof that the person answering was the agent of the defendant at its said office, employed there by it to receive for it such communications as should come in that manner. All of

these conditions were shown to exist upon the trial of this case, either by direct evidence or by fair and reasonable inference, or as matters of judicial knowledge."

After calling attention to the authorities on the question, the court says:

"The general rule, as gathered from the foregoing decisions, is that where it is shown that the witness called up the other party at his place of business, through the central station with which both were connected, and received a response as in the usual course of business over the telephone, this is sufficient *prima facie* identification of the speaker at the other end of the line as the party called, or his authorized agent, and that, upon such proof, the ensuing conversation, if otherwise admissible, may be testified to by the witness. It is proper to add that the weight of such evidence depends largely upon the circumstances of each case and is always a question for the trial court or jury."

The supreme court of Illinois has also considered this question since the publication of Mr. Wigmore's work on Evidence, in the case of *Godair* v. *National Bank*, 225 Ill. 572. In this case a witness who was formerly cashier of the bank was permitted to testify that he called up the Godair Commission Company by telephone and asked for Mr. Godair, but was informed that he was out; later the commission company called up the bank and said the party wanted by the bank was now in, and he thereupon had the conversation in which he inquired if drafts of one Moreland upon the Godair Commission Company would be paid. The party he talked with said they would. The witness did not know Mr. Godair, did not recognize his voice, and could not say with whom he talked. It was held that the testimony was admissible and its weight was for the jury.

Among the cases to the same effect, which have been decided since the publication of Mr. Wigmore's

work on Evidence, will be found the following: *Conkling* v. *Standard Oil Co.*, 138 Iowa, 596; *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.*, 107 Md. 556; *Gilliland & Gaffney* v. *Railway*, 85 S. C. 26; *Holzhauer* v. *Sheeny*, 127 Ky. 28; *General Hospital Society* v. *Rendering Co.*, 79 Conn. 581; *Barrett* v. *Magner*, 105 Minn. 118. There are others but we cite these as supporting and sustaining Mr. Wigmore's text.

In the case of *Reed* v. *Railway Co.*, 72 Iowa, 166, the court, in considering an objection to a telephone communication, said:

"It is claimed that the testimony as to the communication by telephone should have been excluded, because it was with some unknown person, and ought not to bind the defendant. It appears that the telephone was placed in the yards for the very purpose of communicating with the office. It was the means of communication provided by the defendant; and, in the absence of any testimony showing that some officious intruder had taken up quarters in the office, and assumed to transact the business of the company, it ought to be presumed that the communication was made with one having authority to give directions as to the matter inquired about. * * *"

In *Wolfe* v. *Railway Co.*, 97 Mo. 473, the court, speaking through Mr. Justice Barclay, said:

"A question arose incidentally at the trial upon the admission in evidence of a conversation held through the telephone between some one at the instrument in plaintiffs' private office and the witness. It was admitted, though the witness did not identify the voice of the speaker as that of either of the plaintiffs or their clerk. The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public contemporary history. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his busi-

ness, through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances, but not the effect of such evidence after its admission. It may be entitled, in each instance, to much, or little weight in the estimation of the triers of fact, according to their views of its credibility, and of the other testimony in support, or in contradiction of it."

In the case of *Western Union Tel. Co.* v. *Rowell,* 153 Ala. 295, the plaintiff testified to calling the telegraph company by telephone and having a conversation with the person who answered the phone after the connection was made. The evidence elicited by the conversation over the telephone tended to show that the telegraph company was lacking in diligence in the delivery of the message. It was held that the evidence was admissible and its weight was for the jury.

See, also, the following cases: *Globe Printing Co.* v. *Stahl,* 23 Mo. App. 451; *Rock Island, etc., R. Co.* v. *Potter,* 36 Ill. App. 590; *Rogers Grain Co.* v. *Tanton,* 136 Ill. App. 533; *Guest* v. *Railroad Co.,* 77 Mo. App. 258; *Oskamp* v. *Gadsden,* 35 Neb. 7; *Kansas City Star Pub. Co.* v. *Warehouse Co.,* 123 Mo. App. 13.

In the instant case it is not necessary that we go as far as the rule which has been adopted in some of the cited cases goes; it is sufficient that we hold and we do hold, that where both parties are subscribers to the same telephone exchange and one party, using the telephone directory to ascertain the number of the other party, calls for such other party, and is connected by central with such other party, and a conversation ensues in which the party called re-

sponds and informs the party calling that he is the party called, that, upon proof of such facts, a rebuttable presumption or inference arises sufficient to make a *prima facie* case of identity.

The testimony shows that bills of defendant bore the name of Mr. Paige as president of the company. This court has held that agency may be inferred from the fact that circulars and letter-heads of the defendant described one as its agent. *Randall* v. *J. A. Fay & Egan Co.*, 158 Mich. 630. See, also, *Austrian & Co.* v. *Springer*, 94 Mich. 343. There was no error in receiving the telephone conversation in evidence or in refusing to direct a verdict for the defendant.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.