## LEWIS et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. February 5, 1924.)

No. 1690.

1. Criminal law ⬤⟿1149—Indictment and information ⬤⟿136—Motion to quash addressed to court's discretion; not reviewable on writ of error.

A motion to quash is addressed to the discretion of the trial court, and will not be reviewed on writ of error.

2. Indictment and information ⬤⟿121(1), 133(7)—Remedy where indictment vague is by motion for bill of particulars, and not by motion to quash.

If charges in an indictment are vague and general, accused's remedy is by motion for bill of particulars, and not by motion to quash.

3. Criminal law ⬤⟿552(4)—Identity of other party to telephone conversation may be established by circumstantial evidence.

Recognition of the voice of the other party to a telephone conversation is not the only means of identification, but circumstantial evidence may be as persuasive as testimony that the voice was recognized.

4. Criminal law ⬤⟿566—Evidence of identity of other parties to telephone conversation held sufficient to justify its admission.

In a prosecution for using mails to defraud, evidence of circumstances attending telephone conversation, and of letters acknowledging such conversations, *held* sufficiently to identify defendants as the other parties to the conversations, to justify the court in admitting the evidence, though the witnesses could not identify the voices.

5. Criminal law ⬤⟿855(8)—Statements by government witness to juror held not to require declaration of mistrial as matter of law.

Statements by government's witness, in prosecution for using the mails to defraud, in reply to greeting and question by a juryman, that he was a witness for the government and "a fine bunch of Yids to get in trouble," and "they had done me up brown," *held* to be merely a rhetorical or epithetical characterization of what witness' testimony showed he had suffered at defendants' hands, which did not disqualify juror, and the court was not, as a matter of law, bound to declare a mistrial and take the case from the jury.

6. Criminal law ⬤⟿1039—Court's interrogation of juror without objection before submitting case held no open to objection on appeal.

Where, before the case was submitted, a juryman was interrogated by the court in the presence of counsel without objection as to a conversation with a government witness, no objection could be made on appeal.

7. Criminal law ⬤⟿911, 1156(1)—Motion for new trial addressed to discretion of court; not reviewable on writ of error.

A motion for a new trial is generally addressed to the discretion of the trial court, and is not reviewable on writ of error.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⟨key⟩486—Testimony of market value of stocks, based on broker's records, held competent.**

Expert testimony by a broker engaged in buying and selling bonds for 15 years as to the market value of stocks involved, based on his records, which he testified showed the market value with reasonable accuracy, *held* competent.

**9. Criminal law ⟨key⟩811(1)—Court need not instruct as to particular portions of evidence only.**

No party can require the court to give instructions based on part only of the evidence, or to adopt his contentions as to the significance or weight of any particular portions of the testimony.

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Samuel S. Lewis and others were convicted of using the mails in a scheme to defraud, and they bring error. Affirmed.

Harvey H. Pratt, of Boston, Mass., for plaintiffs in error.

Essex S. Abbott, Sp. Asst. U. S. Atty., of Boston, Mass. (Robert O. Harris, U. S. Atty., and Joseph V. Carroll, Sp. Asst. U. S. Atty., both of Boston, Mass, on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiffs in error, herein called defendants, Lewis, Kauffman, and Schwartz, were, under section 215 of the Criminal Code, convicted of using the mails in a scheme to defraud. The indictment charges nine persons; two of these were acquitted by order of court, two by the jury, one was never apprehended, and the ninth was apparently nonexistent. The three defendants convicted were, under the style of S. S. Lewis & Co., B. F. Kauffman & Co., and H. H. Superior & Co., dealing in oil, mining, and other speculative stocks, with offices in Boston. Some or all of the others indicted were salesmen. The gist of the fraudulent scheme charged was that the defendants or their agents would first induce various purchases of small quantities of these speculative stocks; that thereafter they would represent to such purchasers that they had customers for such stock at advanced prices, but in larger blocks, so that to avail themselves of this chance for profit it would be necessary for the customers to buy more shares; that these representations of customers for larger blocks were false and fraudulent. We learn that this method of inducing customers to enlarge their holdings has come to be "known in the street as dynamiting." The fate of Benn illustrates the plan: He was induced to buy 200 shares of Monarch Petroleum at $3 a share, 300 more at $4 a share, and later 500 more at $4.25 a share, making 1,000 shares, costing him in money and Liberty Bonds $3,925. The purchases were induced by representations that the defendants had as a customer a New York syndicate for a block of 1,000 shares at $12 a share. The stock thus sold to Benn averaged to cost the defendants 80 cents a share, and had a market value of perhaps 50 cents a share.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The business both of initial sales and of "dynamiting" was done largely by toll telephone calls to persons mostly in the country districts of New England.

The indictment contained 15 counts. The defendants were found guilty on Nos. 2, 7, 8, 12, and 13, and not guilty on the other counts.

Count 2 refers to a sale in April, 1921, to Carl Herrick, of Brownsville, Vt., of 100 shares United States Metal Cap & Seal Company stock at $12 per share.

Count 7 refers to a sale of 500 shares of Monarch Petroleum Corporation's common stock to Samuel Freeman of Waterman, Me., in April, 1921.

Count 8 refers to a sale of 80 shares of Monarch Petroleum Corporation's stock at $5 per share to A. L. Gaudet, of Rockwood, Me., in March, 1921.

Count 12 refers to a sale of 100 shares of Monarch Petroleum Corporation's stock at $5 per share to D. H. Danforth, Foxcroft, Me., in February, 1921.

Count 13 refers to a sale in March, 1921, of 500 shares of Monarch Petroleum Corporation's stock at $4.25 a share, $2,125, to G. H. Benn, of Hodgdon, Me.

The defendants offered no evidence.

[1, 2] Turning to the assignments of error:

(1) The motion to quash. On the day set for trial the defendants were, with the government's assent, permitted to withdraw their pleas of not guilty, and to file a motion to quash. The motion was overruled, and the defendants excepted. A motion to quash is addressed to the discretion of the trial court; it will not ordinarily be reviewed by the court above on writ of error. McGregor v. United States, 134 Fed. 187, 69 C. C. A. 477. But we add that in this case the discretion was rightly exercised. Had the defendants' contention, that the charges in the indictment were too vague and general, been well grounded, their appropriate remedy would have been by motion for a bill of particulars. Wilson v. United States (C. C. A.) 275 Fed. 307, 311.

(2) The second assignment is waived.

[3, 4] (3) The third assignment raises the question of the admissibility of evidence of telephone talks between the victims and the defendants or their agents. The customer victims of the defendants had never known personally nor seen them, and of course could not recognize their voices.

The undisputed testimony showed that the defendants were carrying on a wholesale business of this sort by telephone. In the office conducted under the name of S. S. Lewis & Co. was a private branch exchange, with an operator and 12 lines. The toll charges during the period in question are shown by the following items:

December, 1920 ............................................... $1,062.38
January, 1921 ................................................ 1,837.50
February, 1921 ............................................... 1,604.61
March, 1921 ................................................. 985.23
April, 1921 ................................................. 1,123.74
May, when the defendants went out of business................. 489.16

There were also other substantial toll charges in the office carried on under the name of S. S. Superior & Co.

The telephone operator in the Lewis office testified that all calls went through her, and that the defendants and their salesmen all used the telephone calls which she put in, and that she specially remembered calls for 11 witnesses named, including Herrick, Freeman, Gaudet, Danforth, and Benn—the customers referred to in the counts on which the defendants were convicted.

There were numerous letters put in evidence containing acknowledgments of telephone communications concerning these sales, of which the following may be taken as typical:

"March 7, 1921.

"Mr. A. L. Gaudet, Rockwood, Me.—Dear Sir: Pursuant to your telephone conversation with us today, we herewith beg to confirm your additional order of eighty (80) shares of Monarch Petroleum Corporation's stock at $5.00 per share.

"As agreed, you are to mail us your check for two hundred ($200) dollars, balance within thirty (30) days.

"Thanking you for this additional item of business, and assuring you that we will handle your account to the best of our ability, we are,

"Very truly yours,					S. S. Lewis & Co.,
"LLS/B							L. L. Schwartz."

The gist of the problem is whether there was sufficient identification of the persons in the Boston office calling the witnesses, or later responding to the calls of the witnesses, so as to justify the court in admitting the evidence. Plainly, recognition of the voice is not the only means of identification. Circumstantial evidence may be as persuasive as testimony that the voice is recognized. Barrett v. Magner, 105 Minn. 118, 121, 117 N. W. 245, 127 Am. St. Rep. 531.

This question has recently been carefully considered in Wallace v. United States (C. C. A.) 291 Fed. 972; Theisen v. Taxicab Co., 200 Mich. 136, 146, 166 N. W. 901, L. R. A. 1918D, 715; Robilio v. United States (C. C. A.) 291 Fed. 975, 982, 983, where some of the leading cases are cited and analyzed.

Indeed, when the facts in the case are properly analyzed, the question is not open in this circuit; it was settled in Chubb v. Sadler (C. C. A.) 284 Fed. 710. The evidence of identification in this case is clearer than in the Chubb Case. See, also, Sawyer v. Eaton, 293 Fed. 898, decided by this court November 22, 1923; 3 Wigmore Ev. § 2155.

The evidence was rightly admitted.

[5] (4 and 5) The fourth and fifth assignments are directed to the refusal of the judge to declare a mistrial because a juror, after he had been sworn as a juror, had talked with the witness Freeman about the case. The court had no knowledge of the situation until the case had been in large part tried. The first witness called by the government was the telephone operator in the Lewis concern, who gave important testimony as to the general business methods of the defendants. She was followed by a post office inspector, who testified at length to conversations with the defendants at the time he made his investigation. Then three investors testified to their dealings, largely by telephone, with the defendants. The next witness was Samuel Freeman, a jeweler in Waterville, Me., who testified at length to purchases of stock of the Monarch Petroleum Company, beginning with the purchase of 100 shares for $500, and finally, as a result of rep-

resentations as to increasing his holdings in order to sell out to a New York syndicate that was to buy control, reaching an aggregate investment of $5,500 for 1,000 shares. On cross-examination, he testified that he was born in Boston, had lived here and still had a large acquaintance here, including a member of the jury, with whom he had passed the "simple greetings of the day" on the first two days of the trial; that the juryman asked him what he was doing here, and Freeman stated that he was a witness for the government, and said to the juryman: "A fine bunch of Yids 'to get in trouble," or "something like that." "They had done me up brown, * * * just a jocose remark." These are the strongest expressions used. Taken out of their context, they somewhat exaggerate the significance of the conversation between Freeman and the juryman. After this cross-examination, counsel for the defendant Schwartz moved that the case be taken from the jury and that the court declare a mistrial. A recess was taken, and the court, with all counsel, adjourned to the lobby, where, without objection on the part of counsel, the court interrogated the juror. After this conference in the lobby, the court called counsel to the bench, stating:

"I have a statement to make for the record. On this motion to declare a mistrial, I have talked with the juror, who states that he has only met the witness twice in his life, and that the statements made to him would not in any way influence him in this case, and in view of the fact that the important statements made by the witness to the juror are already in evidence, in that it appears that the witness has paid $5,500 to S. S. Lewis & Co. for 1,000 shares of Monarch Petroleum stock, and that the remaining portion of the conversation between the witness and juror only relates to a general characterization, which would not prevent the juror from rendering a fair verdict, I deny the motion."

[6] To this ruling counsel excepted, and claimed to include in their exception also "such fair question as may be open to us from the course of the court in talking to the juror and in determining what in advance he would have to say." As to this last, it is clear that nothing is open; for, without objection on the part of counsel, the juror had been summoned into the lobby and there interrogated, in the presence of counsel, by the court. The question before us is as to whether, as matter of law, the court was bound to declare a mistrial.

What was done does not fall under the condemnation of "secret instructions or clandestine communications." See Lewis v. Lewis, 220 Mass. 364, 370, 107 N. E. 970, 972 (L. R. A. 1915D, 719, Ann. Cas. 1917A, 395). Everything that the court did was done in the presence of counsel for the defendant.

[7] Nor are the cases in point, generally arising on motions for new trial, in which a juryman, after verdict, has been interrogated as to the effect on his mind of evidence improperly admitted, or of occurrences in the jury room. Woodward v. Leavitt, 107 Mass. 453, 459, 9 Am. Rep. 49, and cases cited and reviewed. As at the time of this occurrence the case had not been submitted to the jury, there was, of course, no encroachment upon the rule that a verdict may not be impeached by evidence from a juror as to happenings in the jury room. Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114,

Ann. Cas. 1914A, 614; Mattox v. United States, 146 U. S. 140, 148, 149, 13 Sup. Ct. 50, 36 L. Ed. 917. A motion for a new trial is generally addressed to the discretion of the trial court, and not reviewable on writ of error. Pickett v. United States, 216 U. S. 456, 30 Sup. Ct. 265, 54 L. Ed. 566; Blitz v. United States, 153 U. S. 308, 312, 14 Sup. Ct. 924, 38 L. Ed. 725. But the real question here is whether this juror was, as matter of law disqualified. Clearly the case cannot be stronger for the defendants than if the conversation with Freeman had been disclosed before the trial began, and the court had then, against the objection of the defendants, held the juror not disqualified. The question, under such circumstances, is one for the discretion of the trial court, as was held by Chief Justice Waite in Reynolds v. United States, 98 U. S. 145, 156 (25 L. Ed. 244), where he said:

"The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest."

Compare, also Judicial Code, § 275; G. L. Mass. c. 234, § 28; Commonwealth v. Poisson, 157 Mass. 510, 511, 32 N. E. 906; Commonwealth v. Phelps, 209 Mass. 396, 414, 95 N. E. 868, Ann. Cas. 1912B, 566; Woodward v. Dean, 113 Mass. 297; Logan v. United States, 144 U. S. 263, 270, 298, 12 Sup. Ct. 617, 36 L. Ed. 429; St. Clair v. United States, 154 U. S. 134, 147, 148, 14 Sup. Ct. 1002, 38 L. Ed. 936.

What Freeman said was, if it can be regarded as anything more than jocose, nothing more than a rhetorical or epithetical characterization of what his testimony showed he had suffered at the defendants' hands. His evidence showed that between March 17 and April 28, 1921, he paid $5,500 for 1,000 shares of Monarch Petroleum, an average of $5.50 a share. The market value of that stock at that period varied from 40 cents to 62½ cents, or less than 10 per cent. of what he paid for it. This evidence spoke for itself to the jury. His evidence acquired no additional significance by reference to his "having been done up brown by a lot of Yids."

The trial judge might well have concluded that the situation fell under the principle laid down by Chief Justice Marshall, in 1 Burr's Trial, 416, cited in Reynolds v. United States, 98 U. S. 145, 155, 25 L. Ed. 244. The Chief Justice said that—

"light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror, but that those strong and deep impressions, which close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."

Compare, also, Graybill v. De Young, 146 Cal. 421, 80 Pac. 618; Gardle v. Hoffman, 105 Ill. 147, 152; Thomson v. People, 24 Ill. 61, 76 Am. Dec. 733; Thrift v. Redman, 13 Iowa, 25; McIlvaine v. Wilkins, 12 N. H. 474; State v. Ayer, 23 N. H. 301, 320. The court was not, as matter of law, bound to declare a mistrial and take the case from the jury. There was no abuse of discretion.

[8] (6) The sixth assignment is that the court erred in admitting the evidence of the witness McConnell, who gave evidence as an ex-

pert on the market value of the stocks dealt in by the defendants. This witness testified that he had been engaged in buying and selling bonds for about 15 years; that the records of brokers indicate the market value with reasonable accuracy. He was permitted to testify from his records as to the market value of Monarch Petroleum, which affects all the counts upon which the defendants were convicted, except the second, and to United States Metal Company, which affects the second count, based on transactions with Herrick.

This evidence was either immaterial, and not harmful, or it was competent. Under modern business practices, the old rules as to evidence on value have necessarily been more or less relaxed. It would not be useful now to cite and analyze the cases. Many of them are referred to by Mr. Justice Hughes in Virginia v. West Virginia, 238 U. S. 202, 212, 35 Sup. Ct. 795, 59 L. Ed. 1272. Long ago in the Federal courts evidence like McConnell's was held competent. See Cliquot's Champagne, 3 Wall. 114, 141, 18 L. Ed. 116; Fennerstein's Champagne, 3 Wall. 145, 18 L. Ed. 121; Cf. Wigmore Ev., § 719; Whitney v. Thacher, 117 Mass. 523, 527.

[9] (7) The other assignments relate to the court's refusal to give certain requests for rulings. It is not clear that any exception was taken to the charge as given. At any rate, no such exception has been argued before us. The charge was full and accurate. It is familiar law that no party can require the court, in effect, to argue his case by giving rulings based on a part only of the evidence, or to adopt his contentions as to the significance or weight of any particular portions of the testimony. Hooper v. Cuneo, 227 Mass. 37, 40, 116 N. E. 237, and cases cited; Agnew v. United States, 165 U. S. 36, 57, 17 Sup. Ct. 235, 41 L. Ed. 624; Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. 201, 34 L. Ed. 803; Grand Trunk v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Coffin v. United States, 162 U. S. 664, 672, 16 Sup. Ct. 943, 40 L. Ed. 1109; Commonwealth v. Johnson, 188 Mass. 382, 74 N. E. 939.

The judgment of the District Court is affirmed.