**Max P. LASH, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 4894.**

United States Court of Appeals, First Circuit.

April 7, 1955.

Rehearing Denied May 2, 1955.

James A. Williams, in pro. per.

No appearance for respondent.

Before DENMAN, Chief Judge, and HEALY and BONE, Circuit Judges.

238

Joseph N. Welch, Boston, Mass., with whom Anthony Brayton, John E. Laursen, and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Charles F. Choate, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

A jury in the court below· found the defendant-appellant guilty as charged in all three counts of an indictment alleging evasion of income taxes in violation of § 145(b) of the Internal Revenue Code,

Title 26 U.S.C. § 145(b),[1] and the court imposed a sentence of imprisonment on each count, the sentences to be served concurrently. On this appeal from the judgment of sentence we are concerned with assertions of error on the part of the District Court in the charge as given and in the failure to charge as requested, in rulings on the admission and exclusion of evidence, in questioning a juror in chambers in the absence of the defendant and in subsequently denying a motion for mistrial based thereon, in permitting a portion of the argument of government's counsel to stand without cautioning the jury to pay no attention to it, and in denying a motion for judgment of acquittal. Not all of the assertions of error are of sufficient substance to warrant discussion. We shall therefore state only the facts necessary for consideration of the matters which we think call for comment.

In the first count of the indictment it is alleged that the defendant, as the treasurer of a corporation named Bristol Fabrics, Inc., willfully and knowingly attempted to defeat and evade the corporation's income tax in an amount stated by filing and causing to be filed on its behalf a false and fraudulent return for its fiscal year ending November 30, 1946. In the second and third counts it is alleged that the defendant willfully and knowingly attempted to defeat and evade his personal income taxes in stated amounts for the calendar years 1946 and 1947, respectively, by filing false and fraudulent returns for those years.

[1] The government's general theory throughout the trial and on this appeal is that the defendant caused Bristol to pay purely personal expenses of his own and of his immediate family, and later to deduct those payments as its business expenses, thereby understating the corporation's net income by the amount of those deductions, and that the payment of those expenses by Bristol constituted additional income to the defendant which he failed to report in his personal returns.

There can be no doubt that the defendant caused some items of his and his family's purely personal expenses to be paid by Bristol and deducted by it as expenses of its business. Indeed, the defendant admits as much as to a few relatively minor items. But there is evidence from which the jury could well have found that the items so paid and deducted by Bristol were not few in number and insignificant in amount, but, on the contrary, were numerous and amounted in gross to several thousand dollars. And from this the jury would be warranted in drawing the inference urged on it by the government that the corporation did not deduct those items because of inadvertence or mistake, as the defendant contended, but that the defendant, as president, treasurer, principal managing officer, and majority stockholder of the corporation knowingly and willfully caused it to take those deductions in an attempt to defeat or evade a substantial part of its income tax for the year involved. Furthermore, there is nothing in Bristol's books to show that it was ever reimbursed by the defendant for the items of his and his family's personal expenses which it paid, or that it listed an account receivable against him in the amount of those expenses, and it appears from the defendant's tax returns that the only amount he reported as received from Bristol was his salary. From the foregoing it is

---

1. "(b) Failure to collect and pay over tax, or attempt to defeat or evade tax.

"Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

clear that the court below did not err in denying the defendant's motion for judgment of acquittal on all three counts.

We therefore turn now to matters which at the most would entitle the defendant to a new trial.

The principal complaint leveled by the defendant at the charge is with respect to the instructions given to the jury on the issue of willfulness. He says that willfulness is an essential element of the crime with which he was charged and a key issue in the case, and that the court's instructions on the issue were both unclear and inaccurate to his serious prejudice. His trial counsel, however, did not object to the portion of the charge dealing with the issue of willfulness in accordance with Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C., wherein it is provided: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Nevertheless, the defendant urges that we consider his assertion of error under the established principle of appellate practice, see Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495, embodied in Rule 52(b) of the Federal Rules of Criminal Procedure which reads: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The two Rules quoted above impinge upon one another but do not actually conflict. The Rule requiring objection to the charge before the jury retires is a salutary one in that it affords an opportunity for the prompt correction of inadvertent misstatements, oversights, omissions, or even erroneous statements of law, which if not corrected at the time would necessitate a new trial after an appeal with consequent delay and expense to the defendant and to the public. Fur-thermore, the Rule prevents a defendant from sitting silently by when he is aware of an error in the charge perhaps more technical than seriously prejudicial, which could and undoubtedly would be corrected on the spot if brought to the court's attention, to the end that in the event of an adverse verdict, he would have good grounds for a new trial with the chance of a favorable verdict from another jury. On the other hand, should the Rule be rigidly applied, appellate courts would be powerless to correct grave miscarriages of justice resulting from serious errors in the charge whenever a defendant or his counsel through ignorance, inadvertence, or inexperience failed to object before the jury retired to consider its verdict. Therefore, appellate courts will take notice of errors asserted by counsel for the first time on appeal, and also notice errors *sua sponte*, when in their discretion notice of the error is necessary to prevent an injustice. The guiding principle with respect to spontaneous notice of errors, which also applies to notice of assertions of error made by counsel for the first time on appeal, was clearly and succinctly stated in United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 as follows: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." See Screws v. United States, supra; Yoffe v. United States, 1 Cir., 1946, 153 F.2d 570, 576 and see also Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 wherein the problem is discussed by several members of the Court although in a slightly different setting.

Under this rule we would certainly notice the omission of any reference whatever in the charge to the issue of willfulness. But that is not the situa-

tion before us, for that issue was not only stressed in the arguments of counsel on both sides but it was also discussed by the court in its charge. It is true that the court's discussion of the issue might have been more elaborate, but reading the charge as a whole against the background of the evidence and the arguments, we think the court covered the issue fully enough for the jury to understand the importance of the issue. Nor do we think that the probability of confusion in the minds of the jury from what was said is great enough to warrant the inference of a serious miscarriage of justice requiring our intervention under Rule 52(b).

█ The alleged errors of the court in failing to charge as requested do not require extended discussion. It will suffice to say that the requested instructions, insofar as they were not given in substance, were either inaccurate or incomplete statements of law. Considering the charge as a whole we think the court gave the jury adequate guidance for its deliberations.

There are various versions of the event mentioned in the first paragraph of this opinion involving the interrogation of the juror, for it occurred in large part at times when the court reporter was not present. Briefly, however, the story which emerges from the different accounts is this: During a recess on the fourth morning of the trial the court was informed by one of its attachés that the wife of juror No. 2 had been seen in the corridor talking with the defendant's wife. The court called counsel on both sides into its lobby, told them of the report, and asked them if they knew anything about the incident. They expressed complete ignorance with respect to the matter and the court then sent a bailiff to bring in juror No. 2. The juror was brought in and when asked by the court said that he knew nothing about the reported incident and added that neither he nor his wife knew either Mr. or Mrs. Lash. The court then asked what the juror's wife was doing in the courtroom and the juror replied that she had come in to see the trial and then to go out with him to lunch. The court told the juror to tell his wife not to come in again and the juror left expressing the hope that his wife had done nothing wrong.

The court then told one of the defense counsel to ask the defendant if either he or his wife had any prior connection with either juror No. 2, or his wife, and counsel reported back in about a minute that there was no such connection. The court said that if either party felt prejudiced by the event it would excuse juror No. 2 and proceed with eleven jurors if both parties agreed. Neither party consented to that procedure and counsel for the defendant announced that he was considering a motion for mistrial. The court indicated that it was not disposed to grant such a motion unless the government's counsel consented, and it then asked defense counsel to find out what had actually occurred between the juror's wife and the defendant's wife. The conference in chambers broke up and immediately after the recess counsel for the defendant moved for a mistrial.

Later in the day, while the motion for mistrial was still under advisement, the court called counsel to the bench for a conference, and at that time counsel for the defense told the court that the juror's wife had noticed the defendant's wife weeping in the corridor and, apparently as a gesture of sympathy, escorted the latter to the ladies' room, but that the two women had not discussed the case at all. At the close of the day, as the jury was leaving the courtroom, the court called juror No. 2 up to the bench and asked him if he had been frightened by being called into chambers that morning. According to the defendant's version only the court and the juror were at the bench at this time, although all counsel and the defendant were still in the courtroom. According to the government's version counsel on both sides were present at the bench, but the defendant him-

self was not. At any rate, the juror replied that as a matter of fact he "may have been a little bit frightened," and the court then asked if he was still frightened and if the occurrence of the morning would have any effect on his ability to return a fair verdict on the evidence either for the defendant or for the government. The juror answered "No, sir," and the court then said to the juror: "There is no reason why it should. Forget about the whole thing." On the following day the court denied the defendant's motion for a mistrial.[2]

■ The foregoing recitation clearly discloses that this is not a case wherein the court in chambers instructed one juror on the law in the presence of counsel and directed the juror to relay the instruction to his fellows in the jury room, Ah Fook Chang v. United States, 9 Cir., 1937, 91 F.2d 805, 808 et seq., or a case wherein the court without informing the defendant or his counsel placed a juror under the surveillance of an agent of the Federal Bureau of Investigation. Remmer v. United States, 1954, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654. Nor is it a case involving some form of private communication, contact, or tampering with a juror during the trial which, if established in a criminal case, gives rise to a rebuttable presumption of prejudice to the defendant. Mattox v. United States, 1892, 146 U.S. 140, 148–150, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527. While at first glance the meeting of the defendant's wife and the juror's wife in the corridor may have seemed fraught with dire consequences to the fairness of the trial, particularly to the government, it turned out on only superficial investigation to be merely a tempest in a teapot. There is nothing about the incident in its entirety to compel the conclusion that it rendered the trial unfair to either side or that it operated even indirectly to the defendant's prejudice. In the absence of any clear showing of prejudice to the defendant arising from the incident, we have no occasion to disturb the District Court's ruling denying the motion for mistrial, for such motions are directed primarily to the discretion of the trial court, and that court, experiencing the event at first hand and observing the juror's character, personality, and demeanor under questioning, is in a far better position than we to determine the impact, if any, of the incident upon him.

■ Now, however, defense counsel assert that the defendant was prejudiced and denied his rights by the action of the court in questioning the juror and instructing him to forget about the whole thing when he, the defendant, was not personally present. We might dispose of this contention summarily on the authority of Johnson v. United States, 1943, 318 U.S. 189, 201, 63 S.Ct. 549, 87 L.Ed. 704, wherein the Supreme Court brushed aside a like contention made for the first time on appeal with respect to the absence of the defendant by order of the court during the argument of a question of law. Some additional discussion, however, does not seem out of place.

When the court interrogated the juror in chambers in the defendant's absence but in the presence of counsel on both sides it was following a practice sanctioned by this court a generation ago in Lewis v. United States, 1 Cir., 1924, 295 F. 441, 445. The defendant does not complain of that practice on constitutional grounds. Nor does he contend that he had a constitutional right to be present in person at the bench while the matters with respect to the juror were there being discussed and the juror interrogated and told to forget all about the incident. His contention is that he is entitled to a new trial because his personal absence from the judge's lobby and from the bench constituted violations of his rights under Rule 43 of the Federal

2. Counsel for the defendant say that they learned after verdict, they do not say how, that juror No. 2 told his fellows all that happened during his conversations with the court.

Rules of Criminal Procedure which provides in its first sentence that: "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules." [3]

The short answer to this contention is that the defendant has not shown how he was prejudiced in any way by his absence from the judge's lobby or the bench while the juror was being interviewed by the court, and the incident involving the juror's wife and defendant's wife was under discussion by the court and counsel. He was represented at the trial by experienced and competent counsel and we do not see how he could possibly have added anything of importance to what was said at either place on his behalf; we do not see how his physical presence would have been of any value whatever in discussing a matter which turned out on superficial investigation to be of no moment. Indeed, his presence might even have been prejudicial to his case for had he been present the juror might reasonably have inferred that his integrity and impartiality were groundlessly under fire from the defendant himself. Thus if there was any error in dealing with the incident involving the juror in the defendant's absence, and we do not intend to intimate that there was any, the error was harmless and must be disregarded in accordance with Rule 52(a) of the Federal Rules of Criminal Procedure which provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The defendant's assertions of error in allowing a portion of the argument of the government's counsel to stand without cautionary comment to the jury, and his assertions of error in admitting and excluding evidence have all been

considered, but found too insubstantial to warrant discussion.

The judgment of the District Court is affirmed.

---

3. The second sentence of the Rule reads: "In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."