HATTIE M. SUBRA v. W. M. HARMER AND ANOTHER.
CLAREMONT FARMERS MUTUAL FIRE INSURANCE
COMPANY, GARNISHEE.
FARMERS CREDIT COMPANY OF DODGE CENTER AND
OTHERS, INTERVENERS.[1]

March 13, 1942.

No. 33,093.

---

[1]Reported in 3 N. W. (2d) 101.

*John Swendiman*, for appellant.

*Kenneth A. Myster*, for Farmers Credit Company, intervener-respondent.

HOLT, JUSTICE.

Plaintiff, the owner of a judgment rendered and docketed against defendants in the district court of Dodge county, this state, January 11, 1937, for $11,923.58, garnisheed the Claremont Farmers Mutual Fire Insurance Company on August 24, 1940. The company disclosed $589.15 due defendant A. A. Harmer, and that it had received notice from the Farmers Credit Company of Dodge Center, before the garnishment, that it claimed the money. The garnishee was permitted to pay the $589.15 into court and was dismissed from the proceeding. The Farmers Credit Company filed its complaint in intervention, which plaintiff answered, and intervener replied to. Two others also filed complaint in intervention, but, since their right to claim the money is subject to that of the Farmers Credit Company, no further attention need be given to their rights on this appeal. Plaintiff and intervener Farmers Credit Company stipulated as to the facts. The court upon that stipulation made findings of fact and conclusions of law upon which judgment was rendered in favor of intervener for the sum deposited in court, and costs taxed against plaintiff. From the judgment, plaintiff appeals.

To secure the payment of his three promissory notes aggregating $2,400, defendant A. A. Harmer, on May 27, 1940, executed a chattel mortgage. It was properly filed the next day in the office of the register of deeds of Dodge county, where the mortgage stated the mortgagor resided in the town of Claremont, in possession of the personal property mortgaged. It specified 54 head of cattle, 75 hogs, 5 horses, various farm machinery, plows, seeders,

tractors, wagons, sleds, "milking machine complete with pipes and motor," etc. It recited that it "is intended to cover all of the horses, cattle, hogs, machinery, etc., which the Mortgagor now owns or may hereafter acquire. * * * Also, so much of the Mortgagor's hay, feed and forage, now in his possession, and/or hereafter grown, raised, harvested, purchased or acquired by the Mortgagor, as may be required for use in feeding the herein mortgaged animals, until the debt secured by this mortgage is fully paid." It also contained an agreement to keep said personal property insured against fire or tornado, with loss payable to the mortgagee.

It was stipulated that at the time of the execution of the mortgage the mortgagor was the owner under contract for deed, and in actual possession, of a described tract of land in the township of Claremont, Dodge county; and that thereafter, on August 14, 1940, the barn on the premises, with contents, while the premises were occupied and in possession of the mortgagor, burned. That among the contents burned were 48 tons of hay, growing on the land described when the mortgage was executed, valued at $480; 1½ tons of ground feed from grain growing at the time of execution of the mortgage, worth $35; milking machine of the value of $43.65; and, in addition, in the barn were hay rope, wheelbarrows, forks, and fly sprayer belonging to the mortgagor of the value of $30.50.

Plaintiff recognizes the validity of the chattel mortgage, and that it covers the milking machine, worth $43.65; but denies that it covered the destroyed hay and feed, or the rope, wheelbarrows, fly sprayer, and forks in the barn. If that be correct, the judgment is excessive.

As to the hay and feed, the largest items, the contention is that the description is too indefinite, and Walter A. Wood M. & R. M. Co. v. Minneapolis & N. Elev. Co. 48 Minn. 404, 51 N. W. 378, is cited and strongly relied on. In that case the chattel mortgage covered the wheat and grain raised on 40 acres of a specified quarter section of land in North Dakota, during the year 1890.

The complaint alleged that of the 600 bushels harvested and threshed on 75 acres of said farm about 220 bushels thereof the mortgagor sold and delivered to defendant. From the record it did not appear that there had been any attempt to sever or set apart the 40 acres in wheat from the 75 acres sown. Of course the description was too indefinite and uncertain. In the case at bar the hay and feed mortgaged is that needed for the stock described in the mortgage—54 cattle, 5 horses, and 75 hogs. It is stipulated that the 48 tons of hay and the ton and a half of feed in the barn were harvested from the mortgagor's farm and were in his possession when destroyed by the fire. Any person of ordinary sense would know that the burned hay and feed were not more than was needed for the stock specified in the mortgage. In the case of Tolbert v. Horton, 33 Minn. 104, 22 N. W. 126, the rule applicable is stated thus: "The general rule is that a description in a chattel mortgage of the mortgaged property is sufficient if it will enable a third person, aided by inquiries which the instrument itself suggests, to identify the property." This was followed in Munson v. Bensel, 169 Minn. 434, 211 N. W. 838, where prior decisions are referred to, and the rule was stated to have been of particularly useful application in Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 A. S. R. 531. Of aid here also is Helgeson v. Farmers Co-op. Assn. 160 Minn. 109, 199 N. W. 821.

As to the items of hay rope, wheelbarrows, forks, and fly sprayer, we think the *ejusdem generis* rule invoked by appellant covers these when the long list of specified implements and machines is considered.

Judgment affirmed.