*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1049**

State of Minnesota,
Respondent,

vs.

Daron A-Saad Johnson,
Appellant.

**Filed August 10, 2015
Affirmed
Kirk, Judge**

Douglas County District Court
File No. 21-CR-13-239

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Chad M. Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

A jury convicted appellant Daron A-Saad Johnson of first-degree controlled-substance crime for the benefit of a gang, second-degree controlled-substance crime for the benefit of a gang, and possession of stolen property. Appellant argues that (1) there was insufficient evidence that he committed the first two counts for the benefit of a criminal gang; (2) as a result, he is entitled to a new trial on the lesser-included controlled-substance crimes due to the admission of "extremely prejudicial" gang-related evidence; and (3) the district court abused its discretion in imposing a sentence at the top of the presumptive range. We affirm.

## FACTS

On February 11, 2013, J.S., a second woman, Anthony Shannon, and appellant were traveling on Interstate 94 in northwest Minnesota towards Minneapolis, in a vehicle driven by Brandon Thomas. During the trip, the men left the women at a McDonald's restaurant in Fergus Falls without warning, taking the women's personal property with them. J.S. immediately called law enforcement to report the theft and that there was cocaine in the vehicle.

Trooper Richard Homan of the Minnesota State Patrol responded to J.S.'s call and stopped the vehicle. After obtaining a search warrant, officers searched the passenger-side front door of the vehicle, locating baggies of crack cocaine, a plastic bag containing multiple small baggies of cocaine, and a digital scale. Trooper Homan testified that the small baggies and digital scale were indicative of drug sales activity. After obtaining a

2

search warrant to search appellant's cell phone, officers discovered numerous photographs of drugs, guns, and large sums of currency on the phone. There were also multiple photographs of appellant, Shannon, Thomas, and other individuals flashing gang signs or hand signs disrespecting rival gangs.

J.S. testified that appellant, Shannon, and Thomas are members of a gang called YNT, which stands for "Young and Thuggin." Minneapolis Police Officer David Ligneel testified as an expert for respondent State of Minnesota about Minneapolis gangs, particularly YNT.

After a three-day trial, the jury found appellant guilty of first-degree controlled-substance crime, second-degree controlled-substance crime, and gross misdemeanor possession of stolen property. The district court sentenced him to 142 months in prison, near the top of the presumptive sentencing range. He also received a concurrent 365-day sentence for the possession-of-stolen-property conviction. Appellant appeals the controlled-substance-offense convictions and sentence.

## DECISION

**I.  The evidence is sufficient to sustain appellant's convictions for the first- and second-degree controlled-substance crimes committed for the benefit of a gang.**

In considering a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438

3

N.W.2d 101, 108 (Minn. 1989). Ordinarily, this court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

In reviewing a conviction based on circumstantial evidence, however, we apply a two-step analysis. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption," while circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." *Bernhardt*, 684 N.W.2d at 477 n.11 (quotation marks and alterations omitted) (quoting Black's Law Dictionary 595–96 (8th ed. 2004)).

First, we "identify the circumstances proved," deferring to the jury's acceptance of proof of those circumstances and rejection of evidence conflicting with those circumstances. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). "We recognize that the trier of fact is in the best position to determine credibility and weigh the evidence." *State v. Al–Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). In the second step, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved" to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). We do not defer to the fact-finder's choice between reasonable inferences drawn from the circumstances proved. *Id.*

4

"Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Hanson*, 800 N.W.2d at 622 (quotation omitted).

In a case in which the state offered both direct and circumstantial evidence on a disputed element, appellate courts may apply the traditional standard to review the sufficiency of the direct evidence, standing alone, to prove the element; only if the direct evidence is insufficient to prove the disputed element must appellate courts apply the two-step standard to review the sufficiency of the evidence to prove the element. *See Silvernail*, 831 N.W.2d at 605 (Stras, J., concurring in part) (reasoning that "there is no reason to evaluate the reasonableness of inferences that the jury is *never* required to make" and concluding that "the 'circumstantial evidence standard' does not apply to our review of an element of a criminal offense that the State has proven by direct evidence"); *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (stating that "[w]hether we apply the standard of review applicable to circumstantial evidence depends on whether the conviction necessarily depends on circumstantial evidence" and concluding that "[b]ecause the state's direct evidence is insufficient by itself to prove [defendant]'s intent . . . , we must consider the state's circumstantial evidence, which requires that we engage in the type of heightened scrutiny that is appropriate for circumstantial evidence").

To prove the commission of the first-degree controlled-substance crime for the benefit a gang in this case, the state needed to prove that: (1) on one or more occasions within a 90-day period, appellant unlawfully sold one or more mixtures of a total weight of ten grams or more containing cocaine; (2) appellant knew or believed the substance

5

sold was a mixture containing cocaine; and (3) appellant sold cocaine for the benefit of, at the direction of, in association with, or motivated by involvement with a criminal gang with the intent to promote, further, or assist in criminal conduct by gang members. *See* Minn. Stat. §§ 152.021, subd. 1(1), 609.229, subd. 2 (2012); 10 *Minnesota Practice*, CRIMJIG 20.02 (2012). To "sell" cocaine includes possession of cocaine with intent to sell. Minn. Stat. § 152.01, subd. 15a (2012). To prove the second-degree controlled-substance crime, the state needed to prove that appellant: (1) knowingly possessed one or more mixtures of a total weight of six grams or more containing cocaine; (2) knew or believed that the substance possessed was cocaine; and (3) possessed cocaine for the benefit of, at the direction of, in association with, or motivated by involvement with a criminal gang with the intent to promote, further, or assist in criminal conduct by gang members. *See* Minn. Stat. §§ 152.022, subd. 2(a)(1), 609.229, subd. 2; 10 *Minnesota Practice*, CRIMJIG 20.14 (2012). Appellant challenges only the sufficiency of the evidence for the third element of each crime.

### A. Criminal gang.

Under Minnesota law, a criminal gang is:

> [A]ny ongoing organization, association, or group of three or more persons, whether formal or informal, that: (1) has, as one of its primary activities, the commission of one or more of the offenses listed in section 609.11, subdivision 9; (2) has a common name or common identifying sign or symbol; and (3) includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

Minn. Stat. § 609.229, subd. 1 (2012). "When feasible, it is best to use firsthand knowledge to establish the for-the-benefit-of-a-gang element." *State v. Mahkuk*, 736

N.W.2d 675, 686 (Minn. 2007). We have also advised against the use of expert testimony to prove gang membership by expert opinion. *State v. Lopez-Rios*, 669 N.W.2d 603, 612–13 (Minn. 2003).

Because direct evidence reasonably supports the jury's finding that YNT meets the statutory definition of a criminal gang, we need not apply the circumstantial evidence standard on this issue. *See Silvernail*, 831 N.W.2d at 605 (Stras, J., concurring in part); *Porte*, 832 N.W.2d at 309. Here, J.S. testified that YNT is a known gang in her neighborhood with an identifiable territory, establishing that YNT has a common name. Officer Ligneel testified that YNT is a commonly recognized street gang in north Minneapolis with over 100 members or associates. He described the hand gesture, or gang sign, associated with YNT, and described the "TC" logo of the Minnesota Twins baseball team as a symbol affiliated with "YNT Taliban," which stands for "Taliban crazy." The state presented photographs found on appellant's cell phone consistent with Officer Ligneel's testimony regarding YNT's use of gang signs.

Officer Ligneel further testified, based on his experience investigating YNT, that its primary activities include the ongoing sale of narcotics and firearms, as well as the commission of aggravated assaults and robberies. This testimony is consistent with photographs found on appellant's cell phone and social media showing known YNT members with drugs and large sums of currency. *See State v. Barajas*, 817 N.W.2d 204, 221 (Minn. App. 2012) (stating that photographs showing a defendant with unusually large sums of money are relevant to establishing intent to sell controlled substances), *review denied* (Minn. Oct. 16, 2012). Officer Ligneel described the "loosely structured"

nature of YNT, and YNT members' frequent transportation of narcotics to northern Minnesota, where they can sell them for considerably more money than in the Twin Cities. He also testified that YNT members will direct other members to sell illegal drugs and then collect the proceeds from the seller, and that YNT members will share resources by putting money "on the books" for members to use at the commissary while incarcerated.

### B. For the benefit of a gang.

The state presented largely circumstantial evidence to prove that the controlled-substance crimes were committed for the benefit of a gang. "Intent must generally be proved by inferences from the defendant's conduct and the surrounding circumstances." *State v. Caldwell*, 815 N.W.2d 512, 517 (Minn. App. 2012), *review denied* (Minn. June 27, 2012). We are persuaded that the only rational inference from the circumstances proved is that appellant possessed and sold cocaine for the benefit of, at the direction of, in association with, or motivated by involvement with YNT and/or an affiliated gang with the intent to promote, further, or assist in illegal drug possession and sales by that gang.

Appellant argues that the evidence was "inconsistent and contradictory" about whether he belonged to YNT, Taliban, or another gang, and therefore it was legally insufficient to show involvement with a gang. However, as explained by Officer Ligneel, YNT and Taliban and other associated gangs are loosely structured and closely related organizations. The statutory definition of "criminal gang" allows for the association to be either "formal or informal." Minn. Stat. § 609.229, subd. 1.

8

Appellant cites two opinions of the California Court of Appeal holding that an individual's membership in a gang, by itself, was insufficient to prove the commission of a crime for the benefit of a gang. However, these cases are not precedential, and there is significant evidence beyond appellant's involvement in a gang in this case from which to reasonably infer that the controlled-substance crimes were for the benefit of a gang.

Based upon the verdict, the jury found the following facts to be proved, in addition to those discussed above. Appellant, Shannon, and Thomas were each either members of YNT or another criminal gang closely associated with YNT. On the day in question, after appellant, Shannon, and Thomas stopped at an apartment building for approximately 15 minutes, appellant openly possessed cocaine as he and Shannon returned to the vehicle. Appellant hid the cocaine in the side panel in the vehicle, near the front-passenger seat where he had been sitting. It was later discovered by law enforcement, along with a digital scale with residue matching appellant's DNA. The cocaine was packaged in multiple baggies, weighing 22.2 grams in total.

During the trip, Thomas sent appellant a text message asking him how much to charge for a quarter ounce of drugs. While sitting in a squad vehicle after the stop, appellant and Shannon's conversation was recorded by a microphone in a video camera located in the vehicle. They discussed "stashing the shit[,]" and commented that they were "fucked." Appellant's text messages on the day of the offenses include multiple uses of the phrases "on da gang" and "on da squad," which Officer Ligneel explained as akin to swearing on the Bible, and that "they're telling the truth, and they want to do this." The jury could have reasonably inferred that these were specific references to the

9

men's gang as they transported drugs in Thomas's vehicle, which they intended to sell for the benefit of the gang. Further, YNT members improve their status in the gang by earning money through drug sales, and appellant's phone included numerous photographs of appellant and others flashing gang signs and holding large sums of money.

These facts are consistent with appellant knowingly possessing and selling drugs during the trip in association with, or motivated by involvement with, YNT or another criminal gang, and with intent to promote, further, or assist in criminal conduct by gang members. *See* Minn. Stat. § 609.229, subd. 2. They are inconsistent with any other rational hypothesis. *Id.* Therefore, when viewed in the light most favorable to the verdict, the evidence is sufficient to allow the jury to reach its verdict. *Webb*, 440 N.W.2d at 430.

**II.** **Because there was sufficient evidence to find that appellant committed the controlled-substance offenses for the benefit of a gang, we do not reach his argument that he is entitled to a new trial on the lesser-included controlled-substance crimes due to the admission of "extremely prejudicial" gang-related evidence.**

Alternatively, appellant argues that, because there was insufficient evidence to find that the controlled-substance offenses were committed for the benefit of a gang, the district court should have excluded evidence that he committed the controlled-substance crime to benefit a gang as "extremely prejudicial" and "completely unnecessary," focusing on Officer Ligneel's testimony. Therefore, appellant asserts, if we do not reverse his convictions for insufficient evidence, he is entitled to a new trial on the lesser-included controlled-substance crimes.

10

Because we conclude that there was sufficient evidence to find that the controlled-substance offenses were committed for the benefit of a gang, we do not reach this argument. However, we note that, in order to prove either the first-degree or second-degree controlled-substance crime for the benefit a gang, it was necessary to present evidence proving that a criminal gang exists and that the controlled-substance crime was connected to the gang as required by the statute. *See State v. Jackson*, 714 N.W.2d 681, 692 (Minn. 2006) (recognizing that evidence about a defendant's involvement in a gang, including expert testimony about gang culture and a particular gang, was admissible because it "had significant probative value" to an essential element of the crime under section 609.229, and that exclusion of such evidence would "render[] convictions under [that section] nearly impossible to obtain"); *State v. Vang*, 774 N.W.2d 566, 576–77 (Minn. 2009) (holding that, despite danger of unfair prejudice, expert testimony about gangs was admissible to prove that the defendant committed murder to benefit a gang); *State v. Ferguson*, 581 N.W.2d 824, 834–35 (Minn. 1998) (holding that evidence of gang graffiti in defendant's bedroom was highly prejudicial but admissible in first-degree murder case because it was "essential" to prove motive). Here, the district court correctly limited gang-related expert testimony to specific gangs involved in this case and purposefully avoided duplication of J.S.'s testimony. *See Lopez-Rios*, 669 N.W.2d at 612–13 (describing improper expert gang testimony as that "which was duplicative, was related to general gang activity and affiliations, was extraneous to the factual issues before the jury, and was prejudicial"); *State v. DeShay*, 669 N.W.2d 878, 884–88 (Minn. 2003) (holding gang expert testimony to be inadmissible because it was duplicative of

11

testimony given by witnesses with first-hand knowledge, such as DeShay's association with a gang, that the gang's primary activity was drug trafficking, and that the gang used nonmember drug addicts in the commission of crimes).

**III. The district court did not abuse its discretion in imposing a sentence near the top of the presumptive range.**

"A sentence within the range provided in the appropriate box on the sentencing guidelines grid is not a departure from the presumptive sentence." *State v. Delk*, 781 N.W.2d 426, 428–29 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). An appellate court "will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range." *Id.* at 428. Only in a "rare" case will this court reverse a district court's imposition of a presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

Appellant argues that his sentence should be vacated because the district court erred when it relied on several improper factors in imposing his sentence, including that appellant had prior assaults as a juvenile, was on supervised release for a prior crime of violence, had shown no remorse for his instant crimes, and made numerous false statements at trial. The district court, the agent authoring the presentence investigation report and sentencing worksheet, and the parties all considered appellant's 142-month sentence to be at the top of the presumptive prison sentence range under the Minnesota Sentencing Guidelines. The presumptive sentence for an offender with a criminal-history score of two who is convicted of a first-degree controlled-substance crime, a severity-level-nine offense, is 110 months, with a presumptive range of 94 to 132 months. *See*

12

Minn. Sent. Guidelines 4.A (2012). When an offender is sentenced for a completed offense committed for the benefit of a gang under Minn. Stat. § 609.229, subd. 3(a), and there is no victim under the age of 18, as is the case here, 12 months is added to each presumptive duration and range figure. *See* Minn. Sent. Guidelines 2.G.10.b(2) (2012).[1] Therefore, the presumptive sentence was 122 months, with a range of 106 to 144 months.

Juvenile offenses prior to age 14 are not considered in calculating a criminal-history score. *See* Minn. Sent. Guidelines 2.B.4 (2012). However, nothing in the sentencing guidelines or caselaw precludes a district court from considering juvenile offenses in sentencing. Further, the district court considered appellant's custody status, lack of remorse, and false testimony when imposing a sentence within the presumptive range, and the court's consideration of these factors did not violate appellant's constitutional rights. *Cf. State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995) (stating that, generally, the *offender*-related factor of particular unamenability to treatment in a probationary setting may be used to justify a dispositional departure, but not an upward durational departure, while *offense*-related aggravating factors may be used to support both a dispositional departure and an upward durational departure); *State v. Calmes*, 632 N.W.2d 641, 645 (Minn. 2001) ("The United States and Minnesota Constitutions,

---

[1] This subsection applies if "the victim was eighteen or older." If there were a victim under the age of 18 years, 24 months would be added. Minn. Sent. Guidelines 2.G.10.b(1) (2012). Because there was no victim here, the lesser addition applies. *See State v. Collins*, 580 N.W.2d 36, 41 (Minn. App. 1998) (stating that an ambiguity in a criminal statute should be resolved in favor of leniency to the defendant), *review denied* (Minn. July 16, 1998). Notably, in 2014, the "eighteen or older" category was modified to explicitly include circumstances where the offense does not involve a victim. *See* Minn. Sent. Guidelines 2.G.10.b(1) (2014).

through their due process clauses, ensure that sentencing proceedings observe the standards of fundamental fairness essential to justice.") (quotation omitted). Therefore, it was not improper to consider these factors.

This court generally will not interfere with a sentence where it is clear that the district court "deliberately considered circumstances . . . and exercised its discretion." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011); *see also State v. Van Ruler*, 378 N.W.2d 77, 80–81 (Minn. App. 1985) (stating that the district court is not required to give reasons when it elects to impose a presumptive sentence). The record reflects that the district court did so in this case. It did not abuse its discretion in imposing appellant's sentence.

**Affirmed.**